MARY'S OPINION HEADING 



 NO. 12-94-00205-CR



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


BENNY EARL ROBERTS,
§
 APPEAL FROM THE 173RD

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF


THE STATE OF TEXAS,

APPELLEE
§
 HENDERSON COUNTY, TEXAS

 

OPINION


 A jury found Appellant guilty of delivery of a controlled substance, and the trial court
assessed his punishment at thirty years of confinement. On original submission, we reversed
Appellant's conviction concluding that the trial court erred in conducting a jury shuffle sua sponte
after the conclusion of voir dire and that the aggrieved appellant need not show harm. Roberts v.
State, No. 12-94-00205-CR (Tex. App.--Tyler August 29, 1997, pet. granted) (not designated for
publication). In reaching our conclusion, we relied on Jones v. State, 833 S.W.2d 146, 147-48 (Tex.
Crim. App. 1992). The court of criminal appeals vacated our judgment and remanded the appeal to
us for consideration whether, in light of Cain v. State, 947 S.W.2d 262 (Tex. Crim. App. 1997), the
jury shuffle error was susceptible to harm analysis or whether no harm analysis was possible, either
because the error defies analysis by harmless error standards or because the data is insufficient to
conduct a meaningful harmless error analysis. Roberts v. State, 978 S.W.2d 580 (Tex. Crim. App.
1998). We determined that the error defied analysis under the prevailing harmless error standards
and reversed the conviction. Roberts v. State, 12-94-00205-CR (Tex. App.--Tyler Feb. 26, 1999,
pet. granted) (not designated for publication), 1999 WL 115104. The State filed a petition for
discretionary review challenging our holding. The court of criminal appeals vacated our judgment
and remanded the cause to us for reconsideration in light of its recent opinion in Ford v. State, 73
S.W.3d 923 (Tex. Crim. App. 2002), and, if necessary, for us to address Appellant's remaining
sixteen issues. Roberts v. State, 77 S.W.3d 837 (Tex. Crim. App. 2002). We affirm.


Background


 Appellant was charged by indictment with delivery of less than 28 grams of cocaine. At trial,
Barbara Crow, an undercover narcotics agent, testified that she, accompanied by confidential
informant Paul Preston, purchased two rocks of crack cocaine from Appellant on September 15,
1993. Appellant, she said, got into the back seat of her car to make the exchange. Preston testified
to essentially the same facts. The State also called two law enforcement officers as witnesses to
testify regarding the chain of custody of the alleged cocaine and a Department of Public Safety
chemist to describe the testing of the substance. The cocaine weighed .13 grams.


Jury Shuffle


 In his first issue, Appellant contends the trial court erred in ordering a jury shuffle, sua
sponte, after the commencement of voir dire. We agree. In Ford, the court observed the "[t]he jury
shuffle is designed to ensure the compilation of a random list of jurors, and that the trial judge's
denial of the defendant's request for shuffle does not, in itself, indicate a non-random listing of the
venire." Ford, 73 S.W.3d at 926. Therefore, no harm is shown absent a showing that the process
of assembling a jury panel was subverted to achieve a non-random listing of the venire. See id.
There is nothing in the record of the instant case indicating that the listing of the jury, before or after
the shuffle, was other than random. The substantial right involved in the instant case is the right to
a random listing of the venire. Although it appears that the trial court deprived Appellant of a
tactical advantage, under the holding in Ford, no harm is shown. Appellant's first issue is overruled. 
We therefore address Appellant's remaining issues.




Jury Selection


 In his second issue, Appellant contends the trial court erred in overruling his challenge for
cause of prospective juror Tullos. When asked during voir dire whether he would consider the
defendant's failure to testify as an indication of his guilt, Tullos' answer suggested that he would so
consider it. When questioned by the court if he could follow the court's instructions not to consider
it as evidence of guilt, he replied that he would follow the court's instructions. The final exchange
in the examination of Tullos by the court was, as follows:


 THE COURT: If he fails to testify, will you not consider that as any evidence
against him?


 MR. TULLOS: I can't say that I could, no sir.


 THE COURT: Thank you very much. I find you qualified.



 The trial court denied Appellant's challenge for cause, and Appellant used a peremptory
challenge to remove Tullos from the jury panel. Appellant exhausted his peremptory challenges and
his request for additional peremptory challenges because he had been forced to take an objectionable
juror was denied.

 Appellant cites Holloway v. State, 666 S.W.2d 104, 108 (Tex. Crim. App. 1984) for the
proposition that the trial court commits reversible error in failing to grant a defendant's challenge
for cause when a prospective juror cannot state unequivocally that he or she would be fair and
impartial. However, more recent authority dictates that when a panel member is equivocal as to his
or her ability to follow the law relating to the privilege against self-incrimination, the appellate court
must defer to the trial court's judgment. Brown v. State, 913 S.W.2d 577, 580 (Tex. Crim. App.
1996). In Brown, Judge Maloney stated for the court, as follows:


 [N]othing is left to the discretion of the trial court when the venireperson is unequivocal as to their
ability to follow the law. If they testify unequivocally that they can follow the law despite personal
prejudices, the trial court abuses its discretion in allowing a challenge for cause on that basis. 
Likewise, if they testify unequivocally that they cannot follow the law due to their personal biases, the
trial court abuses its discretion in failing to grant a challenge for cause on that basis. However, when
the venireperson vacillates or equivocates on their ability to follow the law, the reviewing court must
defer to the trial court's judgment.



Brown, 913 S.W.2d at 580 (emphasis in original). Tullos vacillated between his belief that
Appellant should testify if he is not guilty and his stated willingness to follow the law as the judge
might instruct him. Considering the written record of his voir dire examination in its entirety, we
seriously doubt Tullos' ability to disregard Appellant's failure to testify. The trial judge, however,
was in the position to observe Tullos' demeanor and the tenor of his responses, and we must defer
to the trial judge's discretion. Therefore, no error is shown. Appellant's second issue is overruled.

 Appellant urges in his third issue that the trial court erred in excusing venireman Harry Stone
after voir dire began. During voir dire, Harry Stone said that he was acquainted with Appellant's
attorney. After the voir dire examination of the panel was substantially completed, Stone told the
court that he was willing to serve, but that he needed to take his wife to a specialist in Corsicana the
next morning. The court responded, "Mr. Stone, I can't excuse you on the ground you have
explained to me, but if you're over sixty-five and want to claim the exemption, you can do that." 
Stone told the court that he was seventy-eight, and the court told him he was excused. In England,
men above seventy were exempted from jury service by statute in 1285 (West. 2, 13 Edw. I., c. 38). 
But the exemption could only be claimed by the persons themselves. Although the statute in effect
at the time of Appellant's trial grants the exemption to persons over sixty-five, it has always been
the law of Texas that a prospective juror can be excused on this basis only if he claims the exemption
himself. Breeding v. State, 11 Tex. 257, 257 (1854).

 Appellant argues that the trial court improperly excused Stone on its own motion, effectively
granting the State an extra strike. See Martinez v. State, 621 S.W.2d 797, 799 (Tex. Crim. App.
1981). The record, however, reflects that Stone exercised his exemption himself, and we see no
error in the trial court's informing him that he had the exemption if he chose to exercise it. 
Appellant's third issue is without merit and is overruled.

 We affirm the judgment of the trial court.

 The remaining portion of the opinion does not meet the criteria for publication and is ordered
unpublished. See Tex. R. App. P. 47.2(b).


Admission of Evidence


 In his fourth issue, Appellant complains that the trial court erred in admitting into evidence
State's Exhibit 1, the cocaine, because it had not been disclosed in advance of trial in accordance
with the trial court's pretrial discovery order. The court's pretrial order clearly ordered the disclosure
of such evidence to Appellant. The State's attorney was also instructed that if he did not have the
information sought by the defense, he was "to make affirmative inquiries of all relevant law
enforcement agencies and agents to determine if such material exists and to instruct agents that in
the event such material becomes available to disclose such material as ordered hereby." Appellant
insists the State's attorney told him that the cocaine had been consumed in testing, and on that basis
he objected to its admission into evidence. Appellant argues that if he had known of the cocaine,
he would have had it separately tested, perhaps producing valuable evidence for the defense. 
Appellant contends that the State's failure to comply with the discovery order led him to make
arguments in his opening statement to the jury that were defeated by State's Exhibit 1. In United
States v. Bagley, 473 U.S. 667, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985), the Supreme Court
observed that an incomplete response to a specific discovery request impairs the conduct of the
defense not only by depriving it of evidence, but also by representing to the defense that the evidence
does not exist. Id., 473 U.S. at 682, 105 S. Ct. at 3384. In such a situation, the defense, relying on
the absence of such evidence, may abandon independent investigation efforts, defenses, or trial
strategies it might otherwise have pursued. Id.

 At the motion for new trial hearing, the assistant district attorney told the court that he told
Appellant's attorney as soon as he discovered the cocaine had not been consumed in testing. The
evidence had not been kept by the district attorney's office but rather the Anderson/Henderson Drug
Investigation Unit. Therefore, the State argues, the violation of the discovery order was not willful,
and the trial court did not err in admitting State's Exhibit 1 into evidence. We agree. 

 Violation of a discovery order does not mandate reversal. King v. State, 746 S.W.2d 515,
517 (Tex. App.-Dallas 1988, pet. ref'd). The trial judge's ruling is reviewable for abuse of
discretion. Ransom v. State, 920 S.W.2d 288, 301 (Tex. Crim. App. 1994) (op. on reh'g). If the
State has "willfully" violated the discovery order, the trial court should exclude evidence whose
inspection was prevented by the State's failure to comply with the discovery order. Hollowell v.
State, 571 S. W.2d 179, 180 (Tex. Crim. App. 1978). We conclude the trial judge did not abuse his
discretion in admitting the challenged exhibit. Appellant's fourth issue is overruled.

 In his fifth issue, Appellant contends the trial court erred in preventing him from telling the
jury that the prosecutor had told his counsel that the cocaine had been consumed in testing. When
surprised at trial by the admission of State's Exhibit 1, Appellant sought to introduce evidence that
the assistant district attorney had told his counsel that the drug had been consumed in testing. If
allowed, Appellant argues, it would have cast doubt on the authenticity of State's Exhibit 1 and
thereby aided the defense. We review the trial judge's ruling on the admission of evidence under
an abuse of discretion standard. Ransom, 920 S.W.2d at 301. We do not believe the trial judge
abused his discretion in excluding evidence bearing principally on the collateral question of the
assistant district attorney's credibility. Appellant's fifth issue is overruled.

 In his sixth issue, Appellant complains the trial court erred in excluding evidence of the bias
and prejudice of the law enforcement agencies against him. In his seventh issue, he urges that the
trial court erred in excluding evidence of the repeated searches of his residence that failed to disclose
contraband, guns, or cash. Appellant attempted to introduce evidence that a justice of the peace had
stated that the police were "out to get" him because they thought he was a drug dealer. He also
sought to introduce evidence that the police has searched his house four times but failed to find any
evidence of illegal activity. The police, he asserts, disrupted his household, damaged the building,
and permitted a drug dog to defecate in his bed. The purported statements of the justice of the peace
were hearsay and properly excluded. Tex. R. Evid. 802 (formerly Tex. R. Crim. Evid. 802). The
evidence of the fruitless searches of his house was not relevant to the accusation for which he was
on trial, the delivery of crack cocaine in Barbara Crow's vehicle on September 15, 1993. The trial
court did not err in excluding the evidence. Appellant's issues six and seven are overruled.


Failure to Grant Mistrial or Dismiss


 In his eighth issue, Appellant claims the trial court erred in failing to grant a mistrial on the
discovery of the State's failure to produce the photograph of Appellant used by Barbara Crow for
pretrial identification. In response to the trial court's production order, the State provided Appellant
with a photocopy of an image of a person alleged to be Appellant and used in the pretrial
identification of Appellant by Barbara Crow. Appellant insists that the copy was of such poor
quality that its use for identification purposes raises questions regarding the reliability of the
identification. When Crow stated her reliance on the photo to identify Appellant, Appellant offered
the document into evidence. In rebuttal, the State was permitted to introduce the much clearer actual
photo examined by Crow and to bolster her identification by her recollection of a scar unmentioned
in the police report. Appellant was forced to exhibit the scar to the jury.

 Appellant did not object to the State's questions about the photo asked on redirect
examination. Therefore, error, if any, was waived. Tex. R. App. P. 33.1 (formerly Tex. R. App. P.
52). The trial court did not err in refusing to grant a mistrial. Appellant's eighth issue is overruled.

 Appellant's ninth issue maintains the trial court erred in failing to dismiss the charges against
him after the State probation officer interrogated Appellant for a presentence report without the
presence of Appellant's counsel and prior to a determination of guilt.

 Appellant was interrogated by a probation officer preparing a presentence report on the
supposition that, pursuant to a plea agreement, Appellant intended to enter a plea of guilty to the
instant offense. Counsel had been appointed for Appellant, but his counsel was not present at the
interview. Appellant did not plead guilty and another attorney was appointed by the court to
represent him. A formal motion to dismiss was filed contending that Appellant was prejudiced by
the premature preparation of the presentence report. At the hearing on the motion, Appellant
testified that he felt he was being coerced and that he was led to believe his failure to cooperate
would adversely affect an upcoming parole hearing. He said the interview made him feel that he
could not be fairly sentenced by a jury, and that it also played a role in his decision not to testify. 
The trial court denied the motion. "The judge may not inspect a [pre-sentence] report and the
contents of the report may not be disclosed to any person unless: (1) the defendant pleads guilty or
nolo contendere or is convicted of the offense; or (2) the defendant, in writing, authorizes the judge
to inspect the report." Tex. Code Crim. Proc. Ann. art. 42.12 § 9(c)(1),(2) (Vernon Supp. 2003). 
In Norton v. State, 755 S.W.2d 522, (Tex. App.-Houston [1st Dist.] 1988), pet. ref'd, 771 S.W.2d
561 (Tex. Crim. App. 1989), relied upon by Appellant, not only was the presentence report made
before the defendant's conviction, but it was given to both the judge and the prosecutor before the
conclusion of the guilt-innocence stage of trial. Norton, 755 S.W.2d at 524-25. The defendant was
forced to move to suppress her statements included in the presentence report which the State sought
to use against her at trial. Id. In this case, neither the judge nor the prosecutor received a copy of
the report or reviewed it prior to the conclusion of the guilt-innocence stage.

 As the State points out, at least five months elapsed between the preparation of the
presentence report and trial. Appellant had several opportunities to discuss with his new lawyer
whether he should testify and whether he should go to the jury or the judge for punishment. The trial
court did not err in denying Appellant's motion to dismiss. Appellant's ninth issue is overruled.


Testimony of Witnesses


 Appellant, in his tenth issue, contends "[t]he trial court erred in permitting the prosecution
to violate the express agreement not to further prepare witnesses."

 Barbara Crow, a witness for the State, had testified at an earlier parole hearing for Appellant,
and the trial court ordered a transcript of her testimony at the parole hearing delivered to Appellant
prior to trial. The State had not yet produced the transcript when the State called Barbara Crow to
testify at trial. The trial court granted Appellant's request to postpone his cross-examination of Crow
until a tape or transcript of her testimony had been produced. Appellant maintains that his counsel
and the attorney for the State agreed that the State could proceed to call other witnesses before the
cross-examination of Barbara Crow proceeded, but that there would be no further preparation of their
witnesses by the attorneys for the State. Later it was revealed that, contrary to Appellant's version
of the agreement, a State's witness, Paul Preston, admitted he had discussed his testimony with the
State's attorney prior to testifying. Appellant contends that this represents a breach of the agreement,
that the breach is attributable to the government, and that the failure of the trial court to enforce the
agreement was reversible error.

 The State maintains that the agreement was to prevent the State from preparing its remaining
witness in the light of testimony from prior witnesses. Appellant himself points to several
noteworthy inconsistencies between Crow's testimony and Preston's. Those same inconsistencies
support the State's argument that there had been no preparation in violation of the agreement. We
conclude that the agreement was not breached. Appellant's tenth issue is overruled.

 In his eleventh issue presented, Appellant insists the trial court erred by denying him his right
to "full and effective" cross-examination of Paul Preston. On direct examination by the prosecutor,
Preston testified that prior to the time that Barbara Crow came to Frankston, he had never "had any
contact with law enforcement people." On cross-examination, Appellant's counsel questioned
Preston, as follows:


 Q Isn't it true that you've been convicted of crimes?


 A Sure.


 Q Well, that was contact with the police; wasn't it?


 A I thought you was talking about on a deal like this.


 Q You've had contact with the police; haven't you?


 A Yes, sir.


 Q How many times have you been arrested?


 [THE STATE]: I'm going to object, Your Honor. We have provided the
information to the Defense Counsel, but this man has never been
convicted of a felony, and I believe it would be improper for
[Defense Counsel] to imply that he has.


 [DEFENSE COUNSEL]: Your Honor, when the witness testifies that he's had no contact with the
police I think it is fair ground for me to impeach that blanket statement, it
goes seriously to his credibility. He made the statement. The statement
needs to be undone. A mere retraction is not enough.


 THE COURT: I sustain the objection.



The State insists that the question "Isn't it true that you've been convicted of crimes" was an
improper question because it implied that Preston had been convicted of an impeachable offense. 
Instead of proceeding to question Preston regarding a conviction of a prior felony or misdemeanor
involving moral turpitude, Appellant's counsel asked, "How many times have you been arrested?" 
Apparently, Appellant had been provided Preston's conviction record before trial. If Preston actually
had been convicted of a felony or a misdemeanor involving moral turpitude, nothing in the trial
judge's ruling prevented Appellant from eliciting that information with proper questions. 
Appellant's eleventh issue is overruled.

 Appellant, in his twelfth issue, claims that he was denied due process by the failure of the
prosecution to correct false testimony by Paul Preston. His thirteenth issue alleges that he "was
denied due process by the prosecution's failure to produce the exculpatory evidence of records of
payments and prior service of Paul Preston as an informant."

 Paul Preston testified that he was not a paid informant and that he had not previously worked
with law enforcement. On the other hand, another State's witness, Barbara Crow, testified that
Preston was a reliable informant, and had provided reliable service in the past. Crow stated that
Preston was a paid informant, although she denied knowledge of the details of payment or of whether
arrangements to avoid prosecution had been made with Preston. Appellant argues that the
uncorrected false testimony deprived him of a very effective means of attacking the credibility of
Preston.

 The undercover operation that resulted in Appellant's arrest was run out of the
Anderson/Henderson County Drug Investigation Unit, not by the Henderson County District
Attorney's Office. The inconsistency in the testimony from the State's witnesses could have been
resolved by Jerry Powell, the supervisor who kept the records. Appellant could have obtained the
information through a subpoena during the three-day trial. Appellant's issues twelve and thirteen
are overruled.


Jury Argument and Jury Misconduct


 In his fourteenth and fifteenth issues, Appellant complains that the trial court erred in
allowing an inflammatory argument to the jury by the prosecutor. Specifically, Appellant complains
about the following argument:


 We are all concerned, each of us, about crime in our communities, about the crime we see on
television and in the newspapers, about crimes we hear about in our schools, in our homes and we
want something to be done to stop that crime. This is your opportunity, as members of this jury, to
do what you can to stop that crime.


 We all know people in our communities who have been strung out on drugs, who have seen their own
lives ruined and have seen the lives of their friends and family ruined by those drugs. You have had
an opportunity here today to stop a person who has been accused of supplying those drugs right here
in your own community, right here in Henderson County, Texas. The real issue today is is it
acceptable type of behavior in Henderson County....



Appellant objected to the argument and asked the court for an opportunity to respond to it, but his
request was refused.

 Appellant argues that the evidence did not show that he had sold drugs to anybody other than
Barbara Crow, and that the prosecutor's argument injected facts outside the record into the trial in
a manner calculated to inflame the jury.

 As Appellant acknowledges, it is well established that permissible jury argument must fall
within one of the following four areas: (1) summation of the evidence, (2) reasonable deduction from
the evidence, (3) answers to defendant's argument, or (4) a plea for law enforcement. See Good v.
State, 723 S.W.2d 734, 735 (Tex. Crim. App. 1986). It is reversible error to permit an argument that
injects facts outside the record into the trial that are prejudicial to the defendant. See Cox v. State,
157 Tex. Crim. 134, 247 S.W.2d 262, 263 (Tex. Crim. App. 1951). But it is permissible for the
prosecutor to argue that the jury, by its verdict, should send a message to the community that people
who commit crimes of this kind will be harshly dealt with. Lawson v. State, 896 S.W.2d 828, 833
(Tex. App.-Corpus Christi 1995, pet. ref'd). The challenged argument was a proper plea for law
enforcement. Appellant's issues fourteen and fifteen are overruled.

 In his sixteenth issue, Appellant contends the trial court erred in failing to grant a new trial
for jury misconduct. Appellant complains that despite the trial court's instructions to refrain from
discussing the case until they retired to deliberate, the jurors discussed the evidence they had just
heard and exchanged comments on the credibility of a witness. However, it appears the discussions
were short and that there were no deliberations before the jury was charged. The trial court properly
overruled Appellant's motion for new trial. Appellant's sixteenth issue is overruled.


Sentence


 In his seventeenth and final issue, Appellant complains that the punishment assessed by the
court was disproportionate in severity to the crime committed. Delivery of less than twenty-eight
grams of cocaine at the time of trial was a first-degree felony, Tex. Health & Safety Code Ann.
481.112(a)(b) (Vernon Supp. 1993), punishable by life in prison or confinement for not more than
ninety-nine years or less than five years. Tex. Pen. Code Ann. 12.32 (Vernon 1994). Appellant's
thirty-year sentence was within the range of punishment provided for the offense at the time of trial. 
However, effective September 1, 1994, the Health and Safety Code was amended to provide that the
delivery of less than an ounce of cocaine is a state jail felony punishable by maximum confinement
of two years. Tex. Pen. Code Ann. 12.35 (Vernon 1994). Appellant argues that the jury convicted
him of delivering a minuscule amount (13/100 of a gram), and that therefore a minimum sentence
would have been appropriate. The present maximum sentence for the crime for which he was
convicted is less than half the minimum sentence at the time he was tried. Appellant observes that
the legislature's reduction of the applicable punishment reflects the collective thought of the people
on the matter, and further demonstrates the disproportionate severity of his sentence.

 The State points out that Appellant had been convicted before on two separate charges and
sent to the penitentiary. He had been unemployed.

 Considering these and other relevant facts adduced at trial, the sentence was not excessive
at the time it was imposed. Appellant's seventeenth issue is overruled.


Conclusion


 Having reviewed, considered, and overruled Appellant's seventeen issues on appeal, the
judgment of the trial court is affirmed.


 BILL BASS 

 Justice



Opinion delivered September 24, 2003.

Panel consisted of Worthen, C.J., Griffith, J., and Bass, Retired Justice, Twelfth Court of Appeals, Tyler, sitting by
assignment.















(PUBLISH IN PART)